BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
C. SALVATORE D'ALESSIO, Jr.
Director, Torts Branch
RICHARD MONTAGUE
Senior Trial Counsel
BRIAN J. BOYD
Trial Attorney (NY Bar # 5562582)
175 N St. NE, 7th Floor
Washington, DC 20002
Tel: (202) 616-4142
Fax: (202) 616-4314
E-Mail: Brian.J.Boyd@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ASHLI BABBITT AND AARON BABBITT, individually and on behalf of the ESTATE OF ASHLI BABBITT,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 24CV0033 BAS DDL<br><br>**DEFENDANT UNITED STATES OF AMERICA'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER VENUE**<br><br>Hearing Date: April 8, 2024<br><br>Honorable Cynthia A. Bashant<br>Courtroom 12B |

# INTRODUCTION

The United States has shown that the relevant factors support transfer of this action to the District of Columbia under 28 U.S.C. § 1404(a). Plaintiff presents no persuasive contrary arguments. He does not address at all two considerations supporting transfer: the lack of compulsory process in this district over nearly all of the identified non-party witnesses, and that transfer to the District of Columbia would substantially reduce party costs because it is closer to where most of the witnesses and evidence are located. The arguments he does present are unpersuasive.

# ARGUMENT

### 1. Plaintiff's Forum Choice Should Be Afforded Minimal Weight

The government demonstrated that Plaintiff's choice to litigate where he resides is entitled to "less weight" when, as here, all "the alleged tortious conduct occurred entirely elsewhere." *Hinestroza v. United States*, No. CV 23-2026-MWF (MRWx), 2023 WL 6787769, at *3 (C.D. Cal. Sept. 6, 2023). Relying on *Dale v. United States*, 846 F. Supp. 2d 1256, 1258 (M.D. Fla. 2012), Plaintiff counters that his forum choice is entitled to substantial deference because of the FTCA's special venue provision, 28 U.S.C. § 1402(b). *See* Dkt. 12, Opposition ("Opp.") at 9. Plaintiff's position is unpersuasive.

Section 1402(b) establishes where venue may be laid in an FTCA action; it does not address the weight a plaintiff's forum choice is given in a section 1404(a) venue-transfer analysis when the alleged acts or omissions giving rise to the action occurred elsewhere. *Dale* is not to the contrary. In *Dale*, a Florida district court declined to transfer an FTCA action to Louisiana, where the acts giving rise to the case occurred. The court explained that "obvious inequity would result" from transfer in part because plaintiff suffered ongoing health problems that required constant treatment in Florida where he resided. 846 F. Supp. at 1257. The interests of justice also did not favor transfer to Louisiana because the plaintiff, who had been detained there, did not have any "voluntary connection" to that forum. Even so, the court recognized that transfer of an FTCA case

1

"might be appropriate" if it involved "slightly different circumstances (or between different parties)". *Id.* Plaintiff here does not point to any comparable hardships involved in litigating in the District of Columbia. This case is not like *Dale*; it is more like *Hinestroza*.

The *Hinestroza* court considered the Florida district court's analysis in *Dale*, acknowledging that the FTCA's venue provision "may" yield "greater deference" to a plaintiff's forum choice in the section 1404(a) transfer analysis. *See* 2023 WL 6787769, at *2. Nonetheless where "most of the underlying incidents occurred elsewhere," plaintiff's forum choice carried "less weight." *Id.* at *3 (citing *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005)). Other courts in this circuit have ruled similarly in FTCA cases. *See Barroca v. United States*, No. 19-CV-00699-MMC, 2019 WL 5722383, at *4 (N.D. Cal. Nov. 5, 2019) (giving plaintiff's forum choice "little deference" where "none of the events giving rise to the instant dispute occurred in this district"); *accord Rogers v. United States*, No. CV-15-08143-PCT-JZB, 2015 WL 8479065, at *3 (D. Ariz. Dec. 10, 2015).

Notably, in *Howze v. United States*, No. 14-CV-10275, 2015 WL 9315542 (N.D. Ill. Dec. 23, 2015), an FTCA case involving wrongful death and negligence claims, the court determined that an estate administrator's forum choice was entitled to "minimal weight" even though the administrator, the decedent's two children, fiancée, and sister, all resided there. *See id.* at *2. Because "the majority, if not the entirety, of the events giving rise to the allegations in the complaint took place in Forrest City, Arkansas [], this factor weighs heavily in favor of transfer," and the court transferred the case to Arkansas. *Id.* at *3. Similar reasoning applies here. Because none of the acts or omissions underlying this action occurred in California, Plaintiff's forum choice should be afforded minimal weight.

### 2.   Convenience of Potential Witnesses Strongly Favors the District of Columbia.

The government established that the convenience of potential witnesses, "the most important consideration in determining whether to transfer venue," strongly favors transfer to the District of Columbia. *Am. GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at *17 (S.D. Cal. Nov. 6, 2018) (citation and internal quotations omitted). The government identified nine potential non-party and twelve party witnesses that live in or near the District of Columbia, described the relevance and materiality of each witness's expected testimony, and showed that those witnesses would be substantially burdened if required to travel to this district for trial. Dkt. 5, Transfer Motion ("Motion") at 8-10. The government also explained that the Court lacked compulsory process over the non-party witnesses. *Id*. at 11-12.

Plaintiff does not respond to the compulsory process argument. *Cf. Abuka v. City of El Cajon*, No. 17-CV-00089-BAS-NLS, 2017 WL 3671512, at *5 (S.D. Cal. Aug. 25, 2017) (Bashant, J.) ("Plaintiff fails to address this argument in his Opposition [], and the Court could construe this silence as . . . concession.") (cleaned up). The arguments Plaintiff does make are unpersuasive.[1]

First, Plaintiff argues the "reasonableness" factor in the due process personal jurisdiction analysis mirrors that in § 1404(a). *See* Opp. 10. He is mistaken. The personal jurisdiction analysis focuses on the burden suffered by the *defendant* in being forced to litigate in a distant forum, not the *witnesses*. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014). Plaintiff's position overlooks the principle that convenience of the witnesses is the "most important consideration" in the section 1404(a) analysis. *Echologics, LLC v. Orbis Intelligent Sys., Inc.*, No. 21-CV-01147-BAS-AHG, 2021 WL 5203283, at *5 (S.D.

---

[1] Contrary to Plaintiff's assertion, for purposes of seeking transfer, a defendant is not limited to the four corners of the complaint when identifying potential material witnesses. *See Am. GNC Corp.*, 2018 WL 6074395, at *18.

3

Cal. Nov. 9, 2021) (Bashant, J.) (collecting cases); *Am. GNC Corp.* 2018 WL 6074395, at *17.

Second, Plaintiff's related argument that the Court's ability to control the sequence of testimony in a bench trial and "the availability of electronic means of discovery and depositions" reduces the burden on these witnesses also misses the mark. Opp. at 10. Even in a bench trial, witnesses providing live testimony would need to travel approximately 2,600 miles to this district for trial. *See Stambanis v. TBWA Worldwide, Inc.*, No. 19-CV-00821-TSH, 2019 WL 1979949, at *2 (N.D. Cal. May 3, 2019). And the availability of video depositions does not address this concern because the focus of the inquiry is "the effect of a transfer on the availability of certain witnesses, and their live testimony, at trial," not during discovery. *Am. GNC Corp.*, 2018 WL 6074395, at *18 (citation and internal quotations omitted). As trial judges and litigators know, "[d]epositions, deadening and one-sided, are a poor substitute for live testimony." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). Plaintiff's own willingness to travel for depositions or interviews, *see* Opp. at 10, does not reduce or eliminate the burdens on the many other witnesses in attending a distant trial.

Plaintiff claims (Opp. at 11) that it is not clear from the information available whether the witnesses the government identified are key witnesses with material testimony. This is incorrect. The complaint identified Officer Lanciano,[2] the D.C. Medical Examiner, two undercover Metropolitan police officers, and Alam and Jones (who illegally entered the Capitol) as relevant witnesses. Dkt. 1, Comp. ¶¶ 9, 11, 49, 53,

---

[2] Plaintiff's reliance on the Department of Justice's *Touhy* regulations to characterize former Capitol Police Officer Lanciano as a party witness is misplaced. *See* Opp. at 11. Those regulations apply to Department of Justice employees, not employees of the Capitol Police. *See* 28 C.F.R. § 16.21(b). They also do not authorize the United States to compel a former employee to testify in a proceeding. *See, e.g., Howze*, 2015 WL 9315542, at *3.

4

63-74. The relevance and nature of the testimony from persons who provided Ms. Babbitt first aid and medical treatment immediately following the shooting are readily apparent. *See, e.g., id.* ¶ 9 (describing Ms. Babbitt's condition after being shot); ¶ 98 (describing alleged harm including "extreme, conscious pain and suffering and mental anguish, [and] emergency medical treatments"). The relevance and nature of the testimony of Metropolitan Police officers who investigated the shooting, including by collecting evidence and interviewing witnesses, are similarly apparent. Plaintiff's argument that Alam's and Jones' residences in Virginia and Kentucky, respectively, should not favor transfer because they may be incarcerated by the Bureau of Prisons in other locations is also unpersuasive. *See* Opp. at 11. Neither Alam nor Jones forfeits his permanent place of residence through incarceration. *See Luna v. Est. of Irigoyen*, No. 14-CV-955 LJO-GSA, 2014 WL 3563411, at *2 (E.D. Cal. July 18, 2014). In any event, Plaintiff does not suggest either Alam or Jones are or will be located in this district during the litigation.

      Plaintiff points to several additional potential witnesses, such as members of Congress and congressional staff, a physician, and approximately thirty individuals present at the scene of the shooting. Opp. at 12-13. But the possibility that such witnesses might be called to testify strengthens the case for venue transfer. Members of Congress and congressional staff generally maintain some residence in or near the District of Columbia. Plaintiff has identified only one witness in California, Dr. Austin Harris, a Los Angeles-based physician. Harris allegedly attempted to provide Ms. Babbitt with medical aid immediately after the shooting. But he does not reside in this district. Other potential witnesses Plaintiff mentions were (in his words) "visiting" the Capitol "from states all over the country, including California, Utah, Texas, Florida, and Pennsylvania to name a few." Opp. at 12. Aside from Plaintiff himself (who did not witness the shooting), he has not identified any witness who resides in this district. *Cf. Howze*, 2015 WL 9315542, at *3 (observing none of decedent's family members, who lived in the chosen forum, "were direct witnesses to the treatment, or lack thereof received by decedent and therefore have

limited personal knowledge" and accordingly, their location did not weigh against transfer). The convenience of the witnesses factor favors transfer.

### 3. Convenience of the Parties Favors Washington, D.C.

Transfer to the District of Columbia will reduce the parties' litigation costs. The District of Columbia is the closest district for most of the witnesses expected to testify. Motion at 12-13; *see also Am. GNC Corp.*, 2018 WL 6074395, at *20 (litigation costs can be "substantially lessened if the venue is in the district in which most of the documentary evidence is stored.") (cleaned up). Plaintiff does not argue otherwise. *See* Opp. at 9-10. Instead, he simply argues that the location of the parties' counsel should not weigh in favor of transfer. *Id*. But omitting counsel's location from the analysis, the party convenience factor still favors transfer.

### 4. Washington, D.C. Provides Easier Access to Relevant Evidence

The vast majority of the documentary and physical evidence necessary to litigate this case is in the District of Columbia. Motion at 13-14. Plaintiff does not refute this. *See* Opp. at 13-14. Nor does he identify any evidence located in this district. Accordingly, "this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

Plaintiff argues instead that because "[m]any of the documents identified in the motion—e.g., documents pertaining to the shooting itself and the ensuing investigation, . . .—already are publicly available on the internet," and others "are easily available electronically," this factor is neutral. Opp. at 13-14. Plaintiff cites no support for either assertion. In any event, "the location of physical documents remains a relevant factor notwithstanding advances in information technology." *Am. GNC Corp.*, 2018 WL 6074395, at *20.

Plaintiff's own willingness to travel to the District of Columbia to inspect physical evidence or the scene of the shooting actually underscores that the location of physical evidence supports transfer. The relevant inquiry is which forum "provide[s] the easiest

6

access to the documents and other physical evidence necessary to defend this action," *Al Otro Lado, Inc v. Kelly*, No. 17-CV-5111-JFW (JPRx), 2017 WL 10592130, at *3 (C.D. Cal. Nov. 21, 2017), not whether the plaintiff is willing to occasionally travel to that district in exchange for obtaining his preferred forum.

### 5. The District of Columbia Federal Court is Best Suited to Apply D.C. Law

The District of Columbia court is more familiar with, and therefore better suited, to apply the District of Columbia law that governs this case. Motion at 14-15. Plaintiff argues that because federal substantive law applies to the assault and battery claims, and California law is like District of Columbia law regarding the negligent use of force, the "law" factor does not favor transfer. Opp. at 14-15. Plaintiff is mistaken.

Plaintiff brings multiple negligence claims, a survival action, and a wrongful death claim in addition to assault and battery and negligent use of force claims. All of these claims, including the assault and battery claims, require consulting District of Columbia law. *See, e.g., Etheridge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993). The wrongful death claim plainly turns on District of Columbia law, *see* D.C. Code Ann. § 16–2701, as does the survival claim, *see id.* § 12–101. Both implicate District of Columbia tort law, as do Plaintiff's various negligence claims. *See Nelson v. American Nat'l Red Cross*, 26 F.3d 193, 199 (D.C. Cir. 1994); *Burton v. United States*, 668 F. Supp. 2d 86, 97 (D.D.C. 2009). What Plaintiff calls the similarity in "the substantive law pertaining to the alleged negligent use of deadly force," Opp. at 14, does not render this Court better suited to resolve all the D.C. statutory and common law claims. *See Hinestroza*, 2023 WL 6787769, at *4 (finding "Southern District of Texas would be more familiar with local law and potentially, for that reason, more efficient."); *see also Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *9 (S.D. Cal. July 27, 2023) (Bashant, J.). This factor favors transfer.

7

Memorandum of Points and Authorities in Support of
Defendant's Motion to Transfer Venue

24cv0033 BAS DDL

### 6. The District of Columbia Has a Stronger Local Interest in This Action

Washington, D.C. has the stronger local interest in this action because of the significant connection between that district and the events giving rise to this lawsuit and because District of Columbia law generally governs the claims. *See* Motion at 15-17.

Plaintiff nonetheless argues that this district has the stronger local interest because Ms. Babbitt lived and worked here, *see* Opp. at 16-18, and had "no ties to the District of Columbia." *Id*. at 18. That is the wrong focus. "To identify localized interests properly," courts must examine "'the significant connections between a particular venue and the events that gave rise to the suit,'" and not "'the parties' significant connections to each forum.'" *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (quoting *TikTok*, 85 F.4th at 364); *see also In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020); *Am. GNC Corp.*, 2018 WL 6074395, at *20.

Plaintiff says "[t]he paramount issue in this case is the wrongful death of [Ms.] Babbitt." Opp. at 18. Ms. Babbitt's death occurred in the District of Columbia. And that outweighs Ms. Babbitt's residential connection to this district when assessing the "local interests" factor. For example, when considering an out-of-state death, the district court in *Howze* determined that "while Illinois surely has an interest in litigating disputes that involve a resident's death, the central events alleged to have taken place in this matter all happened in Forrest City, Arkansas" where the decedent was incarcerated, diagnosed, received treatment, and passed away. 2015 WL 9315542, at *4. It concluded that Arkansas, therefore, had "significant interest in resolving the claim" and transferred the case from Illinois to Arkansas. *Id.* Similar reasoning applies here. The local interest factor favors transfer.[3]

---

[3] Plaintiff's argument that "the District of Columbia is a hostile forum for January 6 [criminal] defendants;" that "[i]t's also prejudicially biased against Ashli Babbitt;" and that "many" D.C. federal judges hold that bias, plainly lacks merit. Opp. at 19. Plaintiff cites neither evidence to support his claim of a district-wide judicial bias, nor legal

8

7. <u>Court Congestion and Time to Trial Favors Neither District</u>

The government has shown that this factor is neutral. Plaintiff argues this factor favors this district because "the District of Columbia is burdened and congested by more than 1,265 January 6 cases." Opp. at 19-20. Plaintiff is mistaken. The Department of Justice website he cites states that 1,265 defendants have been charged related to January 6, but 889 cases have already been resolved through plea deals or trial. *See* https://www.justice.gov/usao-dc/36-months-jan-6-attack-capitol-0 (Jan. 6, 2024) (last visited April 1, 2024).

8. <u>Plaintiff's FOIA Case is Unrelated to this FTCA Action</u>

There are no related cases to this action and therefore the related-case factor is inapplicable here. Plaintiff nonetheless argues that his FOIA lawsuit in this district, *Estate of Ashli Babbitt v. U.S. Department of Justice*, Case No. 3:24-cv-00119-LL-JLB, is related to this case. Therefore, he urges, both cases should proceed here to "promote efficiency and the ends of justice." Opp. at 15. That is incorrect.

The Clerk has not determined the two cases to be related under Local Civil Rule 40.1(e). Nor has Plaintiff filed a related-case notice under the rule's subdivision (f). Indeed, the two cases are not related; the FOIA case turns on whether the FBI has discharged its search and disclosure obligations under FOIA. *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). That has no overlap with this case, which turns on alleged negligent or wrongful acts or omissions by non-FBI federal employees causing personal injury, *see* 28 U.S.C. § 1346(b)(1). The two cases do not "arise from the same or substantially identical transactions, happenings, or events"; they

---

authority suggesting that such a claim has any bearing on a court's venue transfer decision. The single example Plaintiff cites of one judge's comments in a sentencing proceeding does not come close to establishing grounds to decline a venue transfer. *Cf. generally United States v. McTiernan*, 695 F.3d 882, 892-93 (9th Cir. 2012).

9

| Memorandum of Points and Authorities in Support of Defendant's Motion to Transfer Venue | 24cv0033 BAS DDL |
|---|---|

do not "call for determination of the same or substantially identical questions of law"; nor do they "involve substantial duplication of labor if heard by different judges." Civ.L.R. 40.1(e). Because the cases are unrelated, this factor is irrelevant to transfer.

## CONCLUSION

The United States' motion to transfer venue should be granted.

DATED: April 1, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

RICHARD MONTAGUE
Senior Trial Counsel

SARAH E. WHITMAN
Senior Trial Counsel

JOSEPH A. GONZALEZ
Trial Attorney

By:

*/s/ Brian J. Boyd*
BRIAN J. BOYD
Trial Attorney
U.S. Department of Justice, Civil Division
Torts Branch, Constitutional Torts Section
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
(202) 616-4142
Email: Brian.J.Boyd@usdoj.gov